Exhibit C …………………………. Immigration Judge's Decision Dated 10/7/2021

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
NEW YORK, NY

FILE: ███████

IN THE MATTER OF:

SOROKIN, ANNA

RESPONDENT

IN REMOVAL PROCEEDINGS

ORDER OF THE IMMIGRATION JUDGE
WITH RESPECT TO CUSTODY

Request having been made for a change in the custody status of respondent pursuant to 8 CFR 236.1(c), and full consideration having been given to the representations of the Department of Homeland Security and the respondent, it is hereby

__X__ ORDERED that the request for a change in custody status be denied.

_____ ORDERED that the request be granted and that respondent be:

_____ released from custody on his own recognizance

_____ released from custody under bond of $_____

__X__ OTHER DHS has established Respondent is a danger to community by clear and convincing evidence

Copy of this decision has been served on the respondent and the Department of Homeland Security.

APPEAL: waived (reserved) appeal due is 11/8/21

NEW YORK -- NEW YORK SERVICE PROCESSING CENTER (VARICK ST)

Date: ~~October 4, 2021~~
October 7, 2021

_____
Charles R. Conroy
Immigration Judge

XS

A COPY OF THIS DECISION WAS
                    ALIEN  ATTY  DHS
PERSONALLY SERVED  ☐    ☐    ☒
SERVED VIA MAIL    ☐    ☒    ☐
SERVED VIA FAX
DATE 10/7/21  CC  LEGAL ASST  SMS

```
                    UNITED STATES DEPARTMENT OF JUSTICE
                  EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
                            IMMIGRATION COURT
                         201 VARICK ST., RM 1140
                           NEW YORK, NY 10014
```

```
                                          A COPY OF THIS DECISION WAS
                                                       ALIEN  ATTY  DHS
The Law Offices of Audrey A. Thomas P.C.  PERSONALLY SERVED ☐    ☐    ☒
Thomas, Audrey                            SERVED VIA MAIL      ☐    ☒    ☐
245-07 Francis Lewis Blvd                 SERVED VIA FAX       ☐    ☐    ☐
Rosedale, NY  11422                       DATE:11/9  IJ CCZ  LEGAL ASST RR
```

```
In the matter of              File █████████      DATE: Nov 9, 2021
SOROKIN, ANNA
```

___ Unable to forward - No address provided.
_X_ Attached is a copy of the decision of the Immigration Judge. This decision is final unless an appeal is filed with the Board of Immigration Appeals within 30 calendar days of the date of the mailing of this written decision. See the enclosed forms and instructions for properly preparing your appeal. Your notice of appeal, attached documents, and fee or fee waiver request must be mailed to:   Board of Immigration Appeals
                                Office of the Clerk
                                5107 Leesburg Pike, Suite 2000
                                Falls Church, VA 22041
___ Attached is a copy of the decision of the immigration judge as the result of your Failure to Appear at your scheduled deportation or removal hearing. This decision is final unless a Motion to Reopen is filed in accordance with Section 242b(c)(3) of the Immigration and Nationality Act, 8 U.S.C. § 1252b(c)(3) in deportation proceedings or section 240(b)(5)(C), 8 U.S.C. § 1229a(b)(5)(C) in removal proceedings. If you file a motion to reopen, your motion must be filed with this court:
                                IMMIGRATION COURT
                                201 VARICK ST., RM 1140
                                NEW YORK, NY 10014
___ Attached is a copy of the decision of the immigration judge relating to a Reasonable Fear Review. This is a final order. Pursuant to 8 C.F.R. § 1208.31(g)(1), no administrative appeal is available. However, you may file a petition for review within 30 days with the appropriate Circuit Court of Appeals to appeal this decision pursuant to 8 U.S.C. § 1252; INA §242.
___ Attached is a copy of the decision of the immigration judge relating to a Credible Fear Review. This is a final order. No appeal is available.
___ Other: _____

                                    R. Rafailov
                                    COURT CLERK
                                    IMMIGRATION COURT                    FF

    cc: ASSISTANT CHIEF COUNSEL
        201 VARICK STREET, ROOM #1130
        NEW YORK, NY, 10014

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
UNITED STATES IMMIGRATION COURT
201 VARICK STREET
NEW YORK, NEW YORK

File No.: ███████

In the Matter of:

**SOROKIN, ANNA**  **BOND PROCEEDINGS**

The Respondent.

**ON BEHALF OF THE RESPONDENT**
Audrey A. Thomas, Esq.
The Law Office of Audrey Thomas PLLC
245-07 Francis Lewis Blvd.
Rosedale, New York 11422

**ON BEHALF OF THE DEPARTMENT**
Sarah Jolly, Esq.
Assistant Chief Counsel
201 Varick Street, Room 1130
New York, New York 10014

### MEMORANDUM DECISION OF THE IMMIGRATION JUDGE

The Court provides this decision to explain further its reasons for its October 7, 2021 Order denying Anna Sorokin's ("the Respondent") request for a change in custody status. For the reasons set forth below, and as explained orally to the parties at the October 7, 2021 hearing, the Court finds that that the Department of Homeland Security ("the Department") has met its burden of proof to show, by clear and convincing evidence, that the respondent is a continuing danger to the community.

**I.    BACKGROUND**

Anna Sorokin ("the Respondent") is a native of the USSR and a citizen of Germany. *See* ICE Form 71-058, Visa Waiver Program ("VWP"), Notice of Intent to Issue a Final Administrative Removal Order. On March 25, 2021, the U.S. Department of Homeland Security ("the Department"), Immigration and Customs Enforcement ("ICE") detained the Respondent at Bergen County Jail.[1] *See* Exh. B2, Tab B (Form I-830, Notice to EOIR: Alien Address). She was placed in asylum-only proceedings on March 30, 2021, pursuant to the Department's filing of a Form I-863, Notice of Referral to Immigration Judge, indicating that the respondent was a VWP violator who had requested asylum, withholding of removal, and/or protection under the Convention Against Torture in accordance with 8 C.F.R. § 208.2(c). *See* Exh. B2, Tab B (Form I-863).

---

[1] The Respondent is currently detained at the Orange County Jail in Goshen, New York.

1

Pursuant to a motion for custody redetermination submitted by the Respondent, the Court conducted a custody redetermination hearing on April 6, 2021. *See* Form I-286, Notice of Custody Determination; Resp't Emergency Motion for Bond. The Court determined that the Respondent failed to demonstrate that she is not a danger to the community and denied her request for a change in custody. *Id.*; *see also* Order of the Immigration Judge (Apr. 6, 2021). However, on April 25, 2021, the Court vacated its April 6, 2021 Order on the basis that the Court did not have jurisdiction to review the Respondent's custody status. *See* Memorandum Decision of the Immigration Judge (April 25, 2021).

On June 15, 2021, the Court denied the Respondent's application for asylum, ordered her removed from the U.S. to Germany, and further denied her applications for withholding of removal under the INA and protection under the Convention Against Torture. *See* Decision and Orders of the Immigration Judge (June 15, 2021). The Respondent timely appealed to the Board of Immigration Appeals ("BIA").[2]

On September 27, 2021, the United States District Court for the Southern District of New York, issued a decision on the Respondent's habeas petition with respect to custody; it held that pursuant to a stipulation[3] between the parties, this Court shall provide the Respondent with a bond hearing within 14 days, where "ICE bears the burden of establishing, by clear and convincing evidence, that [the Respondent] poses a danger to the community or a flight risk." Exh. B1 ("District Court Order"). This Court was also ordered to take into account "alterative conditions to release" and "[the respondent's] ability to pay" when setting bond. *Id.* Pursuant to the District Court Order, a custody hearing took place on October 7, 2021 at which the parties were provided an opportunity to present evidence and make additional arguments.

## II. EXHIBITS

**Exh. B1:** Opinion and Order of United States District Judge Jesse M. Furman, United States District Court for the Southern District of New York, dated September 27, 2021;
**Exh. B2:** The Department's Submission of Evidence, Tabs A-G, dated October 1, 2021;
**Exh. B3:** The Department's Submission of Evidence, Tabs A-B, dated October 1, 2021; and
**Exh. B4:** The Department's Submission of Evidence, Tab H, dated October 1, 2021.

## III. LEGAL STANDARDS & ANALYSIS

Pursuant to the District Court Order, the Department carries the burden of proving, by clear and convincing evidence, that the Respondent is either a flight risk or whether her release would pose a danger to the community. *See* Exh. B1. In making a custody determination, the District Court directs this Court to consider the Respondent's "alternative conditions to release" and "ability to pay" when setting bond. Exh. B1. Additionally, as a general matter, an Immigration Judge ("IJ") has broad discretion in what factors to consider. *See Matter of Guerra*, 24 I&N Dec.

---

[2] On October 21, 2021, after the instant bond hearing was held, the BIA issued a decision dismissing the Respondent's appeal. *See* Anna Sorkin, A216-082-982 (BIA Oct. 21, 2021).
[3] Notwithstanding this Court's previous holding that it lacked jurisdiction to conduct a bond hearing based on the Respondent's VWP violator status, the Government stipulated to a court order providing the Respondent with a bond hearing within 14 days.

at 40-41 (BIA 2006) (an IJ has broad discretion in deciding the factors that he or she may consider in custody redeterminations, and immigration judges are not limited to considering only criminal convictions in assessing whether a noncitizen is a danger to the community). General criteria for consideration of bond includes a record of appearances in court; employment history; criminal record; pending criminal charges; history of immigration violations; attempts to flee prosecution or authorities; manner of entry; membership in community organizations; and immoral acts of participation in subversive activities. *See id; Matter of Patel,* 15 I&N Dec. 666, 667 (BIA 1976). A noncitizen who presents a danger to persons or property should not be released during the pendency of proceedings to remove him or her from the United States. *See Matter of Urena,* 25 I&N Dec. 140 (BIA 2009); *Matter of Drysdale,* 20 I&N Dec. 815 (BIA 1994).

In determining whether a noncitizen presents a danger to the community, IJs are not restricted to considering only criminal convictions, and may consider any "probative and specific" evidence in the record. *Guerra,* 24 I&N Dec. at 40-41. As "[t]he question whether [a noncitizen] poses a danger to the community is broader than determining if the record contains proof of specific acts of past violence or direct evidence of an inclination toward violence," an IJ may rely on circumstantial evidence and a respondent's misrepresentations to determine whether he or she poses a danger to the community. *Matter of Fatahi,* 26 I&N Dec. 791, 794 (BIA 2016). Accordingly, even if a respondent has not been convicted of offenses charged in a criminal complaint, unfavorable evidence of conduct, including evidence of criminal activity, is pertinent to the Court regarding whether a respondent poses a danger to the community. *See Matter of Teixeira,* 21 I&N Dec. 316, 321 (BIA 1996) (noting police reports can be considered in matters relating to discretionary relief); *Matter of Thomas,* 21 I&N Dec. 20, 23 (BIA 1995) (noting arrests are pertinent in matters relating to discretionary relief). An Immigration Judge should consider both direct and circumstantial evidence of dangerousness, including whether the facts and circumstances present national security considerations. *Fatahi,* 26 I&N Dec. at 791.

### a. Danger to the Community

After careful consideration of all evidence and arguments, the Court finds (1) that the Department met its burden to demonstrate by clear and convincing evidence that the Respondent presents a continuing danger to the community, and (2) the Respondent failed to rebut such evidence or otherwise mitigate this Court's concerns with respect to the Respondent's present danger.

In support of its position that the Respondent should remain in detention as she presents a continuing danger, the Department submitted numerous documents, including: records of the Respondent's criminal arrests and adjudications; immigration records; posts from social media accounts allegedly held by the Respondent;[4] and articles relating to the Respondent's release and activities, including her interviews with news outlets.[5] *See* Exhs. B2, B3, B4. As an initial matter, the Court noted it would afford the Respondent's alleged social media posts and the articles their appropriate weight in light of the Respondent's objections. Upon questioning the Respondent, the

---

[4] The Respondent objected to the admission of these documents on the basis of foundation. The Court ultimately admitted the documents, finding that foundation was established and that they were probative and material.

[5] The Respondent objected to the admission of these documents on the basis of authentication and hearsay. The Court ultimately admitted the documents, finding that they were reliable and persuasive.

3

Court found the Respondent's testimony regarding the lack of foundation and authenticity of the posts and articles to be unpersuasive. The Respondent contends that she did not make the Twitter and Instagram posts personally and that her friend made the posts from her account and tagged the location as "Rikers Correctional Facility." See Exh. B3. However, many of the posts submitted by the Department make references in the first person, indicating that the account owner is referring to herself. See Exh. B3, Tab A, p. 7 (picture of a stack of bills with the caption: "No time to get a wallet so I'm improvising. Also not allowed to get a bank account without permission of NYS DOCCS first so cash it is"); Exh. B3, Tab B, p. 17 (twitter post reading: "My rap sheet longer than yall dicks can ever be"). Given the Respondent's dishonest history, the Court does not find her testimony regarding her friend being responsible for the posts to be convincing.

In addition, the Respondent alleges that she did not partake in many of the interviews and make the statements cited in the articles that the Department submitted. See Exh. B4. While the Respondent admits to partaking in some of the interviews cited in the articles, such as an interview with the New York Times, the Court does not find her testimony, that she was misquoted to have said on numerous occasions that she has no regrets or remorse for her actions that led her to jail, to be convincing. See Exh. B4. The reputable nature of these publications, as well as the consistent reporting of the Respondent making unapologetic statements leads the Court to find these articles reliable. Therefore, the Court finds the evidence submitted by the Department, including the social media posts and news articles, to be persuasive.

In finding she is a danger to society, the Court notes the Respondent's extensive and serious criminal history. On October 25, 2017, the Respondent was arrested by law enforcement in New York on several counts of attempted grand larceny in the first degree, theft of services, and grand larceny in the third degree; the total value of property the Respondent was alleged to have stolen or attempted to steal exceeded $2,153,000. Exh. B2, Tab C. On April 24, 2019, the Respondent was convicted after jury trial of Attempted Grand Larceny in the First Degree, in violation of New York Penal Law ("NYPL") § 110-155.42; two counts of Grand Larceny in the Second Degree, in violation of NYPL § 155.40; Theft of Services, in violation of NYPL § 165.15(03); and Grand Larceny in the Third Degree, in violation of NYPL § 155.35(01). Exh. B2, Tab C. She was sentenced to four to twelve years imprisonment and was ordered to pay restitution to her victims. *Id.*

While nonviolent in nature, the nature of the Respondent's crimes still present a dangerousness to society. The Respondent engaged in dishonest and deceptive conduct, harming both individuals and institutions, albeit, financially. She falsified bank records and deceived financial institutions and individuals to lend her money. Exh. B4, p. 52 ("In late 2016, she said, she returned to Germany for a few months where she worked out the details of A.D.F. and created four fake bank statements in Photoshop, which she said took surprisingly little time."); Exh. B4, p. 109 ("Between April 7 and April 11, Anna allegedly deposited $160,000 in bad checks into her Citibank account and transferred $70,000 from the account before the checks bounced . . . in August she opened a bank account with Signature Bank and, according to the Indictment, deposited $15,000 in bad checks. She withdrew approximately $8,200 in cash before the account was closed."). The Board has cautioned that a noncitizen who presents a danger to persons or **property** should not be released during the pendency of proceedings. See *Matter of Urena*, 25 I&N Dec. 140 (BIA 2009); *Matter of Drysdale*, 20 I&N Dec. 815 (BIA 1994).

4

While the Respondent contends that she has remorse for her actions and intended to pay back her victims, the evidence in the record suggests otherwise. The numerous articles and posts made by the Respondent submitted by the Department demonstrate that she lacks regret or remorse; to the contrary, it seems as if she is proud of her past actions and hopes to profit from them. *See* Exh. B4, p. 1 ("'The thing is, I'm not sorry.' Sorokin said in an interview from prison with the New York Times..."); Exh. B4, p. 9 ("'I got famous for a financial crime,' she says nonchalantly..."); Exh. B4, p. 11 ("Having served almost four years for her various grifts and cons, the former faux heiress has hit the ground running by going on a social media blitz, launching her own website and announcing her blogging channel, Anna Delvey TV."). The Respondent claims that her remorse is demonstrated by the fact that she paid back her victims, in the restitution she was ordered to pay, despite not having to until her criminal case was final and her appeals were exhausted. However, the Court notes that under New York State "Son of Sam" laws, the Respondent would not be able to profit from her crimes (via her $320,000 Netflix deal) without first compensating her victims. *See* N.Y. Exec. Law § 632–a(1) (McKinney 1982); *see also* Exh. B4, p. 3.

The Respondent also contends that her good conduct in prison, which led to her early release and her compliance with her parole demonstrates that she can abide by rules and be a law-abiding member of society. The evidence on the record, however, suggests that the Respondent engaged in questionable activities while in prison and is not so inclined to following the rules. *See* Exh. B4, p. 19 ("Whatever you do, don't buy into any of that 'good behavior' bullshit – it's a fairy tale they tell all new intakes to make their job easier . . . I was very bad, but on the down low. And you can be just like me!"); Exh. B4, p. 56 ("She said she has balked against authority in Rikers and has been disciplined 30 times, including a few weeks in solitary over Christmas. Because of her behavior, Ms. Sorokin said, she has been held in a maximum security section. A city corrections official confirmed the stint in solitary and said Ms. Sorokin had 13 infractions for things like fighting and disobeying orders.").

The Respondent failed to submit any rebuttal evidence that would suggest she is not a danger to society. While she cites more recent and holistic interviews of the Respondent by news outlets, including 20/20, the Court is unable to consider such evidence, as the record is void of any such submissions.

This Court has conducted an independent inquiry on the present record. In doing so, the Court has analyzed the Department's evidence on its own in accordance with its burden of proof. The Court, as explained, does not find that the Respondent sufficiently rebutted the clear and convincing evidence of dangerousness presented by the Department. Moreover, the Court cannot find that analyzing the Respondent's ability to pay bond or considerations of alternatives to detention would ameliorate the specific danger presented here—the Respondent's propensity for committing fraud and dishonest acts towards institutions and individuals. *See* Exh. B4, p. 10 ("Among the many chafing restrictions of her new life as a parolee . . . is a 9pm curfew . . . 'Which is ridiculous to me, because, I'm not a threat to society anymore,' she says, before that mischievous grin creeps back across her face. 'The banks are closed anyways. I don't see what they're scared of.'"). The Court is fully cognizant that the assessment of dangerousness is a *future*-oriented inquiry. *See Siniauskas*, 27 I&N Dec. 207, 207-08 ("The purpose behind detaining criminal aliens is to ensure their appearance at removal proceedings and to prevent them from engaging in further

criminal activity.") (citing *Matter of Kotliar*, 24 I&N Dec. 124, 127 (BIA 2007)). The Court finds that, even if released from detention and ordered to report regularly to ICE, the Respondent would have the ability and inclination to continue to commit fraudulent and dishonest acts. She clearly possesses the knowledge to do so and has failed to demonstrate remorse. Accordingly, the Department's evidence demonstrates by clear and convincing evidence that the Respondent continues to present a danger to the community of the United States if released.

### b. Flight Risk

Given that the Court found the Department met its burden to prove by clear and convincing evidence that the Respondent poses a present danger to the community, it is not necessary to determine whether she is also a flight risk. *See Urena*, 25 I&N Dec. at 141 (citing 8 C.F.R. § 1236.1(c)); *see also* Exh. B1 (the District Court Order states that the Department bears the burden of demonstrating flight risk *or* a danger to the community, not both).

Nevertheless, the Court also finds, by clear and convincing evidence, that the Respondent does pose some risk of flight because of her disregard of the laws of the U.S., her lack of family ties and contacts in the U.S., and her limited relief options before the Court. As discussed *supra*, the Respondent was recently convicted of serious theft offenses. She previously failed to show at court for her criminal charges. *See* Exh. B4, p. 87 ("Later in the summer, with her misdemeanor charges pending, Anna deposited two bad checks into an account at Signature Bank, netting her $8,200, which is how she managed to take what she said was a 'planned trip' to California, where she was arrested . . . and brought back to New York to face six counts of grand larceny and attempted grand larceny, in addition to theft of services, according to the indictment."). Furthermore, the Respondent has failed to establish sufficient ties to the U.S. that would mitigate the risk that she would flee. She does not have a permanent address in the U.S.; her past history of living in hotels, with acquaintances, and constantly moving around also demonstrates her unpredictability. Also, the Respondent's family members live outside of the U.S., in Germany. Lastly, the Respondent's applications for relief before this Court have been denied, and since the instant bond hearing, the BIA has affirmed the Court's denial of the Respondent's applications. Therefore, the Court finds that the Respondent has not mitigated her risk of flight.

Accordingly, after a careful review of the record, the following Order is entered:

### ORDER

**IT IS HEREBY ORDERED** that the respondent's request for a change in custody status be **DENIED**.

___11/8/2021___  
Date

___(signature)___  
Charles Conroy  
U.S. Immigration Judge