Exhibit S …………………………. Parole Memorandum

Cheryl L. Kates PC
Attorney at Law
PO Box 734
Fairport, NY 14450
(585) 820-3818

NYS DOCCS
NYS Board of Parole
1220 Washington Avenue
Harriman State Office Campus
Albany, NY 12226

Re: Anna Sorokin, 19-G-0366
Parole Plan

September 22, 2020

## INTRODUCTION

Anna Sorokin is convicted of Grand Larceny (2nd degree and 3rd degree), Attempted Grand Larceny in the first degree and Theft of Services (4 counts). She is serving a sentence of (4-12). Her merit release appearance is in October 2020.

## SENTENCING MINUTES

There are no official statements according to the parole board report. However, Anna's defense attorney did make a statement and it is erroneously indicated he did not. The parole board report also indicates the sentencing minutes are not on file.

## LETTERS AT SENTENCING

In 2019, father, mother and brother Vadim, Svetlana and Michael Sorokin wrote:

"Our daughter is young; she took a series of incorrect decisions to accomplish her goals, but Anna is not a person who should be behind bars..We have been in contact with her through phone calls these last few months. She has done her time and learned from her mistakes in the past and she is bettering her life. We believe that our daughter will not make such mistakes again and we are confident in our statements" (see Letters of Support).

## PSI

It is upon information and belief, the PSI erroneously lists additional charges in which Anna was NOT convicted of (see Sentence and Commitment Order and Sentencing Minutes). Anna gave a statement regarding this, which is listed on the parole board report under offender statement.

## OFFICIAL STATEMENT OF DEFENSE ATTORNEY

In 2020, Defense Attorney Todd A, Spodek wrote:

"I write this letter in support of Anna Sorokin in her appearance before this honorable board. During this global pandemic, I wish for your health and safety during these unprecedented times.

I represented Anna throughout her criminal proceedings in New York County and continue to represent her now. At trial, Anna was convicted of 8 out of 10 counts of the indictment including: Attempted Grand Larceny in the first degree, Grand Larceny in the 2nd degree (2 counts); Grand Larceny in the third degree (1 count) and Theft of Services (4 counts), while she was on "overstay" status, requiring deportation.

Anna has no prior criminal history outside of the present cases. Anna's crimes were non-violent and all stem from the same type of criminal conduct. Over my time representing Anna, I have formed the opinion that Anna suffered from grand ambitions coupled with limited resources and lack of guidance. Her crimes deviate entirely from the typical financial crimes.

Anna did not develop a strategy to ensure the success of an ongoing fraud. Anna did not plan an exit strategy devised to leave victims high and dry. As I maintained at trial, Anna truly believed that once the "Anna Delvey Foundation" was established, everyone would be made whole. It is my position that Anna overestimated her ability to achieve the establishment of her foundation, and she failed to get the proper guidance as to how she should have proceeded.

At the time of sentencing, I believed an appropriate sentence was time served. Anna served 18 months on Rikers Island during her proceedings. This was a highly publicized case, and my client suffered embarrassment and shame, throughout the proceedings, and this continued when she was sentenced to state prison.

I am in the unique position of being in touch with Anna since her initial arrest and continue being a trusted confidant. I understood, first and foremost, Anna's goals and intentions throughout her endeavors and believe she is remorseful. Anna is the kind of person who routinely calls me to check in on me and hear how my children and family are doing.

Anna has had every opportunity to capitalize on her fame and yet her sole concern has been to make her victims whole. This is evidenced by the fact that she requested that I consent to any funds collected on her behalf be sent to the Attorney General's Office without the need for litigation.

As was my position at the time of sentencing, I believe Anna Sorokin is not a threat to society and is capable of living a law-abiding life, once released. In fact, I am confident that with the right resources, Anna will be the successful entrepreneur she always wanted to be. I respectfully request you permit her to close this chapter of her life and move on to the next one" (see Official Statement Defense Attorney).

## CRIMINAL HISTORY

Anna presents without criminal history.

## DEPORTATION/IMMIGRATION STATUS

There is a deportation notice of action on-file (see Immigration).

## BACKGROUND

Anna Sorokin was born January 23, 1991 to Vidim and Svetlana Sorokin in Moscow, Russia. She is one of two children. She indicates she had a perfectly normal childhood and upbringing. Her father began as a truck driver, who then became an executive at a transportation company. After the company closed in 2013, he started his own business (HVAC) using energy efficient materials.

Anna played tennis in the junior league. She enjoyed ballet, chess, French classes and golf. She is fluent in 4 languages. Her family lived in Russia until she was 16, they then relocated to Germany. In 2011, She graduated from high school and then studied abroad for 2 years (London). Her parents currently live in Germany. Anna dropped out of college, returning to Germany. She worked as an intern in the fashion department of a PR firm. Anna moved to Paris where she worked additionally as an intern at Purple magazine.

## INSTITUTIONAL ADJUSTMENT

During the proceedings, Anna was incarcerated 18 months in the county jail. She completed Food Service 1 and Career Preparedness. She held job titles of general clerk, kitchen helper, salad maker, porter, and baker's helper. Anna completed eligibility for merit consideration (see Certificates). She presents without receiving any Tier 3 tickets, so her disciplinary history is exceptional receiving only minor Tier Two infractions. She was issued the earned eligibility certificate which carries a presumption of release.

## COMPAS

Anna developed goals in her COMPAS case plan which include finishing writing a book, acquire vocational skills, and work towards Serve Safe Certification (see COMPAS). The COMPAS was completed as part of the pre-parole interview process (see COMPAS, file).

## WORDS OF REMORSE

In 2020, Anna wrote:

"In this letter, I will attempt to convey my deepest feelings of remorse and try to shed some light on the circumstances that surrounded my crime. I grew up in a middle-class family with two parents who are still married and who own their own business. My mom and dad live in Germany together with my little brother who attends high school. I've been raised with high expectations of excellence and overachievement being placed on me, resulting in my reluctance to ask for help or admitting failure.

I was 23-years-old, when I started a business that became bigger and bigger, attracting more and more people. In order to keep it financed and alive, I made a string of terrible decisions which I regret to this day. I accept full responsibility for my disgraceful and self-serving actions, such as failing to make good on my promises to settle my accounts with several financial institutions, and I'm solely to blame for putting myself in the predicament I am in right now.

I was convinced that if I were to step out of the project voluntarily, no one will ever want to deal with me ever again and that my professional reputation will be ruined. One thing led to another and unfortunately, things spiraled out of control. By trying to fix things on short term, I unintentionally ended up causing even more damage to everyone involved. When things got bad, my actions got worst. I was consistently travelling and barely bothered to keep in touch with my family, which led me to think that it was inappropriate to reach out for help. I could not admit failure and my trying to save the situation, led to me being trapped in my own web of lies.

However, I never had any intention to harm anyone or permanently deprive anyone of their funds.

My age, inexperience, and lack of guidance at the time of my crime, are part of the reason I thought it was acceptable to do what I did. I suffered drastic consequences both personally and professionally, and I would never do anything to put myself in the same position ever again.

Being incarcerated for the past three years, was a humbling and learning experience. By participating in several programs offered at the facility, and by getting to know the often tragic stories of my peers, I grew a lot as an individual and had a lot of time to rethink my values. The after math of my gross, stupid, and negligent mistakes turned out to be really ugly. Every detail of my crime has been widely documented and broadcasted over the international media and from now on everything I do will be mercilessly and publicly scrutinized. I constantly find myself questioning my life choices and not a day goes by when I don't wonder how different things could have been had I just not given in to consistent pursuit of power, money, and universal acceptance.

I voluntarily chose to commit all the funds from the purchase of my story towards the restitution, the majority of which to the best of my knowledge has already been paid or will be paid in the near future. I plan to continue maintaining close ties to my family who has been incredibly kind and helpful throughout my incarceration. I am also lucky to have the support of the creative community both in the US and in Europe and I am planning to work on multiple projects including writing, producing and consulting and contribute in any way I can to improve the lives of others. I want to use my voice to demonstrate that there are better ways to get recognition and that no one gets away with resorting to illegal means" (see Personal Statement).

## LETTERS OF SUPPORT

In 2020, father Vadim Sorokin wrote:

"I will pick up Anna from the airport. Anna will be able to live with us in our home in Duren. She will be able to work in a family-owned company Calorique, which provides electrical installation services to a variety of customers in our region. We will support her with adaptation to the company's workflow. Anna will have every chance to integrate herself back into normal life.

Her grandmother, 91 years old, will be happy to see her again. Her help with care after her will be greatly appreciated. Anna and her grandmother were close together as she was a child. Now it will be a good chance for Anna to pay back her grandmother for her initial care" (see Letters of Support).

In 2020, friend Lauren Shannon wrote:

"It is my opinion that the excessive media coverage of Anna's trial has distorted public perception of her character and professional aspirations. Her dream was to start her own art foundation. I believe that although she made some mistakes along the way, she has always had

good intentions. Anna never schemed to defraud people or organizations. She is not a grifter or a con artist. Her characterization by media outlets as a materialistic socialite is not true either. She is a private person, who never sought out any sort of fame. In prison, Anna has had opportunities to capitalize on her notoriety. She has continually chosen to stay out of the public sphere.

I believe that Anna will lead a productive life upon release. She has used her time in prison to reflect on the mistakes that led to her incarceration and better herself. Upon release, she will be a contributing member of society and use her creative gifts and industrious spirit to make the world a better place.

It is my opinion, that Anna is ready for parole. She will not benefit from more time in prison. Like all incarcerated people. Anna has been impacted by the COVID 19 global pandemic. During this precarious time, she has limited educational and therapeutic resources available to her in prison. Incarcerated people are at risk are at an increased risk of contracting the virus due to the difficulty of social distancing in a prison environment and limited access to PPE. I respectfully ask that the honorable board will address Anna's case with compassion. Anna's non-violent history and continued strides for self-improvement demonstrate her readiness for release" (see Letters of Support).

In 2020, friend Erian F. Feria wrote:

"Anna and I have been corresponding for a little less than 2 years and I have had the privilege of developing a healthy friendship with her. I am writing this letter today to pledge my support for her release and ask that please consider doing so. Anna is a very good person that's incredibly intelligent that has an even bigger heart. And I believe that during the time she has been in prison that she has been able to reflect, process, and understand why she did what she did was wrong and truly has developed remorse and seeks redemption through the process of back to the community and changing her life positively once released from prison. Everyone deserves a second chance. I truly believe that when she is released that she will surprise a lot of people and help change people's lives for the better" (see Letters of Support).

In 2020, friend Vera Rieder wrote:

"I am knowing Anna since 2007 from school and I have to say: Anna has always been a good and cordial person. She was always by my side -regarding any problems or worries- regarding family, love, friends and other profound "life questions". For example, Anna was able to understand the things which distress or delight other people, so that I can say Anna has always been a very empathetic and clever person. The fact only Anna has learned German within a few months shows her cleverness. But her empathetic cleverness is always on a higher level than any language or scientific skill.

Of course, we had hobbies like other "normal youngsters", meeting friends, having party, travelling or going shopping—but most of the time there were profound conversations between Anna and me. She has inspired me: Dream big, help people—be a good person! She has the ability to understand people and complex circumstances too.